UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HOUSAM BAYDOUN,

                Petitioner,                    Case Number: 11-12180

v.                                    HONORABLE AVERN COHN

GREG MCQUIGGIN,

                Respondent.

_____/

## MEMORANDUM AND ORDER
## DENYING PETITION FOR WRIT OF HABEAS CORPUS
## AND
## DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY

### I. Introduction

This is a habeas case under 28 U.S.C. § 2254. Petitioner Houssam Baydoun (Petitioner) is a state inmate at the Oaks Correctional Facility in Manistee, Michigan. Petitioner, through counsel, filed a petition for a writ of habeas corpus challenging his convictions for first-degree murder and three counts of assault with intent to commit murder. Respondent, through the Attorney General's office, filed a response, arguing that Petitioner's claims are procedurally defaulted and/or without merit. For the reasons which follow, the petition will be denied.

### II. Background

### A. Facts

The Michigan Court of Appeals, in a comprehensive decision addressing Petitioner's claims in detail, summarized the evidence leading to Petitioner's convictions as follows:

Defendant's convictions arise from the shooting death of Peter Issa.  The prosecution's theory at trial was that defendant lured his intended victim, Mustapha Dallal, and three other men, Issa, Scotty Khemoro, and Rony Khemoro, to a gas station in Detroit under the pretext that he would sell them Vicodin.  Instead, he sent a hired gunman, Dedrick McCauley, to conduct the transaction, rob the buyers, and kill Dallal.  According to testimony at trial, McCauley met with the buyers at the gas station, produced a gun, and began shooting.  Issa was killed, Dallal and Scotty were wounded, and Rony was not harmed.

People v. Baydoun, No. 281972, 2010 WL 98694, *1 (Mich. Ct. App. Jan. 12, 2010).

### III.  Procedural History

Petitioner was convicted by a jury in Wayne County Circuit Court of first-degree premeditated murder, first-degree felony murder, and three counts of assault with intent to commit murder.  On May 2, 2007, the trial court sentenced Petitioner to life in prison for the first-degree murder conviction and 300 to 600 months in prison for each assault with intent to commit murder conviction, all to be served concurrently.

Petitioner filed an appeal of right in the Michigan Court of Appeals.  He raised these claims:

I.   Defendant was denied a fair trial where the jury was permitted to consider robbery-felony murder charge, even though it was unsupported by the evidence, thus resulting in an improper compromise verdict.

II.  Where there were conflicting stories as to the exact events of the crime, the defendant's state and federal due process rights were violated where police failed to preserve evidence that could have provided him access to potentially exculpatory information.

III. It was error to deny defendant's motion for directed verdict as there was insufficient evidence at the time the motion was made to constitute a conviction.

IV.  The court erred when it denied the defendant's motion for a mistrial after it allowed hearsay testimony into the record to substantiate a connection between the defendant and the alleged shooter, thereby prejudicing the defendant and denying the defendant his due process rights to a fair trial.

2

V.    Prosecutorial misconduct during the trial and in closing argument denied
      the defendant his due process rights to a fair trial, requiring reversal of his
      convictions.

In a supplemental brief, Petitioner raised the following claim:

I.    The defendant was denied due process and his right to confront the
      witnesses against him, based on newly discovered evidence, which was
      not available to the defendant at trial, in violation of defendant's rights
      under the Sixth and Fourteenth Amendments of the United States
      Constitution.

The Michigan Court of Appeals affirmed Petitioner's convictions.  People v.

Baydoun, 2010 WL 98694 (Mich. Ct. App. Jan. 12, 2010).

Petitioner filed an application for leave to appeal in the Michigan Supreme Court

raising the same claims raised in the Michigan Court of Appeals.  The Michigan

Supreme Court denied leave to appeal.  People v. Baydoun, 486 Mich. 1045 (Mich.

2010).

Petitioner then filed the pending habeas corpus petition.  He raises these claims:

I.    Petitioner Baydoun was denied a fair trial where the jury was permitted to
      consider the robbery-felony murder charge, even though there was
      insufficient evidence to support the charge, thereby denying him due
      process of law.

II.   Petitioner Baydoun was denied a fair trial where the police failed to
      preserve potentially exculpatory evidence, thereby denying him due
      process of law.

III.  Petitioner Baydoun was denied a fair trial where the trial court improperly
      denied his motion for directed verdict, thereby denying him due process of
      law.

IV.   The trial court improperly denied Petitioner Baydoun's motion for a
      mistrial, after it allowed hearsay evidence to be introduced for the purpose
      of connecting Petitioner to the alleged shooter, thereby denying him due
      process of law.

3

V.    Petitioner Baydoun was denied a fair trial by the prosecutor's improper closing arguments, thereby denying him due process of law.

VI.    The Michigan Court of Appeals' conclusion that a new, critical, and previously unavailable witness (Co-defendant McCauley) would not "render a different result probable on retrial," after ruling that witness met the other tests for newly discovered evidence, is contrary to established federal law, is based on an unreasonable determination of the facts, constitutes a denial of Petitioner's federal constitutional right to a trial by jury, and denies him due process of law.

## IV.  Standard of Review

Petitioner's claims are reviewed against the standards established by the

Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat.

1214 (AEDPA).  The AEDPA provides:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a

rule that contradicts the governing law set forth in [Supreme Court cases]' or if it

'confronts a set of facts that are materially indistinguishable from a decision of [the

Supreme] Court and nevertheless arrives at a result different from [this] precedent.'"

Mitchell v. Esparza, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting Williams v. Taylor,

529 U.S. 362, 405-06 (2000)).  "[T]he 'unreasonable application' prong of the statute

4

permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." Wiggins v. Smith, 539 U.S. 510, 520 (2003) (quoting Williams, 529 U.S. at 413). However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" Wiggins, 539 U.S. at 520-21 (citations omitted); see also Williams, 529 U.S. at 409. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, __ U.S. __, 131 S. Ct. 770, 789 (2011), quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004). "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 786-87 (internal quotation omitted).

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. See Williams, 529 U.S. at 412. Section 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require awareness of [Supreme Court] cases, so

long as neither the reasoning nor the result of the state-court decision contradicts them."
Early v. Packer, 537 U.S. 3, 8 (2002). "[W]hile the principles of "clearly established law"
are to be determined solely by resort to Supreme Court rulings, the decisions of lower
federal courts may be instructive in assessing the reasonableness of a state court's
resolution of an issue." Stewart v. Erwin, 503 F.3d 488, 493 (6th Cir. 2007), citing
Williams v. Bowersox, 340 F.3d 667, 671 (8th Cir. 2003); Dickens v. Jones, 203 F.
Supp. 2d 354, 359 (E.D. Mich. 2002).

Lastly, a federal habeas court must presume the correctness of state court
factual determinations. See 28 U.S.C. § 2254(e)(1). A petitioner may rebut this
presumption only with clear and convincing evidence. Warren v. Smith, 161 F.3d 358,
360-61 (6th Cir. 1998).

## V. Discussion

### A. Procedural Default

Respondent argues that some of Petitioner's claims are procedurally defaulted.
"[F]ederal courts are not required to address a procedural-default issue before deciding
against the petitioner on the merits." Hudson v. Jones, 351 F.3d 212, 215 (6th Cir.
2003), citing Lambrix v. Singletary, 520 U.S. 518, 525 (1997). "Judicial economy might
counsel giving the [other] question priority, for example, if it were easily resolvable
against the habeas petitioner, whereas the procedural-bar issue involved complicated
issues of state law." Lambrix, 520 U.S. at 525. Here, the interests of judicial economy
are best served by addressing the merits of Petitioner's claims.

### B. Felony-Murder Charge

6

In his first and third habeas claims, Petitioner argues that the trial court violated his rights under the Due Process Clause by not granting a directed verdict as to the first-degree felony-murder charge because insufficient evidence was presented to support the charge.  Specifically, Petitioner claims that no evidence was presented to show that he had the requisite intent to sustain the conviction on an aiding and abetting theory.

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In re Winship, 397 U.S. 358, 364 (1970).  On direct review, review of a sufficiency of the evidence challenge must focus on whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson, 443 U.S. at 319 (emphasis in original).  In the habeas context, "[t]he Jackson standard must be applied 'with explicit reference to the substantive elements of the criminal offense as defined by state law.'" Brown v. Palmer, 441 F.3d 347, 351 (6th Cir. 2006) (quoting Jackson, 443 U.S. at 324 n.16).

"Two layers of deference apply to habeas claims challenging evidentiary sufficiency." McGuire v. Ohio, 619 F.3d 623, 631 (6th Cir. 2010), citing Brown v. Konteh, 567 F.3d 191, 204-05 (6th Cir. 2009)).  First, the Court "must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Brown, 567 F.3d at 205, citing Jackson, 443 U.S. at 319).  Second, if the Court were "to conclude that a rational trier of fact could not have

7

found a petitioner guilty beyond a reasonable doubt, on habeas review, [the Court] must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." Id.

Under Michigan law, "[in] order to convict a defendant of first-degree murder, the prosecution must prove that the defendant intentionally killed the victim and that the killing was premeditated and deliberate." People v. Anderson, 531 N.W.2d 780, 786 (Mich. Ct. App. 1995). Premeditation may be inferred by the circumstances surrounding the killing. People v. Marsack, 586 N.W.2d 234, 371 (Mich. Ct. App. 1998). "To establish that a defendant aided and abetted a crime, a prosecutor must show that (1) the crime charged was committed by the defendant or some other person, (2) the defendant performed acts or gave encouragement that assisted the commission of the crime, and (3) the defendant intended the commission of the crime or knew that the principal intended to commit the crime at the time he gave aid and encouragement." Riley v. Berghuis, 481 F.3d 315, 322 (6th Cir. 2007), citing People v. Carines, 597 N.W.2d 130, 135 (1999). An "aider and abettor's state of mind may be inferred from all the facts and circumstances. Factors that may be considered include a close association between the defendant and the principal, the defendant's participation in the planning or execution of the crime, and evidence of flight after the crime." People v. Carines, 460 Mich. 750, 758 (1999). "The quantum of aid or advice is immaterial as long as it had the effect of inducing the crime." People v. Lawton, 196 Mich. App 341, 352 (1992).

The Michigan Court of Appeals denied Petitioner's claims of insufficient evidence, finding sufficient evidence was presented to submit the charge to the jury and that,

8

because the first-degree premeditated and first-degree felony murder charges were submitted separately, requiring unanimity on each charge, there was no error.  At trial, Michael Jacobs testified that he came in contact with Petitioner while both were incarcerated at the Wayne County Jail.  He had previously been acquainted with Petitioner.  Jacobs testified that Petitioner told him that he was in jail on suspicion of murder.  Jacobs testified that Petitioner believed that Mustapha Dallal had set him up to be robbed during a drug deal and that, in retaliation, Petitioner arranged for Dallal to be robbed and then killed by a third party.  Petitioner stated that he paid the third party three thousand dollars for the killing.  Petitioner told Jacobs that Petitioner had driven the hit man to the gas station where the murder took place.

When assessing a sufficiency of the evidence claim on habeas review, the Court may not re-weigh evidence or redetermine witness credibility. Marshall, 459 U.S. at 434. Assuming the jury found Jacobs' testimony credible, his testimony was sufficient for a rational trier of fact to find the intent element of premeditated murder under an aiding and abetting theory satisfied.  Thus, the Michigan Court of Appeals' decision was not an unreasonable application of Jackson.  Habeas relief is not warranted on this ground.

### C.  Preservation of Evidence

Next, Petitioner argues that his right to due process was violated because the police failed to preserve surveillance tapes from the gas station.

The Due Process Clause requires that the State disclose to criminal defendants "evidence that is either material to the guilt of the defendant or relevant to the punishment to be imposed."  California v. Trombetta, 467 U.S. 479, 485 (1984). "Separate tests are applied to determine whether the government's failure to preserve

9

evidence rises to the level of a due process violation in cases where material exculpatory evidence is not accessible, see Trombetta, 467 U.S. at 489, versus cases where 'potentially useful' evidence is not accessible.  See Arizona v. Youngblood, 488 U.S. 51, 58 109 S. Ct. 333, 102 L. Ed.2d 281 (1988)." United States v. Wright, 260 F.3d 568, 570-71 (6th Cir. 2001).  A defendant's due process rights are violated where material exculpatory evidence is not preserved.  Trombetta, 467 U.S. at 489.  For evidence to meet the standard of constitutional materiality, it "must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means."  Id. at 488-89.  The destruction of material exculpatory evidence violates due process regardless of whether the government acted in bad faith. See id. at 488; Youngblood, 488 U.S. at 57.

However, "the Due Process Clause requires a different result when . . . deal[ing] with the failure of the State to preserve evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant."  Youngblood, 488 U.S. at 56.  "[U]nless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law."  Id. at 58.  A habeas petitioner has the burden of establishing that the police acted in bad faith in failing to preserve potentially exculpatory evidence.  See Malcum v. Burt, 276 F. Supp. 2d 664, 683 (E.D. Mich. 2003).

The last state court to issue a reasoned opinion regarding this claim, the Michigan Court of Appeals, held that Petitioner's rights were not violated because the

10

evidence was not preserved.  The court of appeals applied the standard articulated in

Youngblood and held that Petitioner failed to show that the police acted in bad faith or

that the evidence was exculpatory.  The court of appeals reasoned:

> Here, the record does not establish either that the police failed to preserve
> evidence, or that the evidence in question was potentially exculpatory.
> Officer Shea testified that he did not obtain a copy of the video
> surveillance recording, and instead only watched it at the gas station,
> because the gas station's equipment did not permit the video to be
> downloaded.  Defendant does not claim that this explanation was false.
> Similarly, defendant does not claim that he was somehow prevented from
> independently investigating the equipment at the gas station, and there is
> nothing suggesting that the video would not have been available for
> viewing by defense counsel if he had visited the gas station.  Furthermore,
> the available testimony indicates that the video would not have been
> useful.  According to Officer Shea, the camera was trained only on the
> interior of the gas station, not the outside area where the shooting took
> place.  Defendant did not challenge this information.  On this record, there
> is no basis for finding that the police failed to preserve the evidence, that
> the evidence would have been exculpatory, or that the police acted in bad
> faith.  Accordingly, defendant has not established a plain error affecting
> his substantial rights.

Baydoun, 2010 WL 98694 at * 3.

This decision is neither contrary to Supreme Court precedent nor an

unreasonable application of federal law or the facts.  Petitioner has not shown that the

video evidence would have been exculpatory.  The record is also devoid of evidence

that the police or prosecution authorities acted in bad faith – a necessary requirement to

establish a constitutional violation where the destroyed evidence was only potentially

useful to the defense.  Given such circumstances, Petitioner has failed to establish a

constitutional violation.  Habeas relief is not warranted on this ground.


**D.  Admission of Alleged Hearsay Testimony**

11

Petitioner next argues that habeas relief should be granted because the trial court improperly admitted hearsay evidence that served to connect Petitioner to the alleged shooter, Dedrick McCauley. Police officer Scott Shea testified that he retrieved Petitioner's cell phone records and determined that phone calls were placed from Petitioner's phone to McCauley's phone. Petitioner objects to the following exchange that then occurred:

> Prosecutor:   How did you determine that was the shooter's phone number?
>
> A.            From his step-mom.

Tr., Vol. III at 32.

It is "not the province of a federal habeas court to reexamine state-court determinations on state-court questions." Estelle v. McGuire, 502 U.S. 62, 67-68, 112 S.Ct. 475 (1991). A federal court is limited in federal habeas review to deciding whether a state court conviction violates the Constitution, laws, or treaties of the United States. Id. "Errors in the application of state law, especially rulings regarding the admission or exclusion of evidence, are usually not to be questioned in a federal habeas corpus proceeding." Seymour v. Walker, 224 F.3d 542, 552 (6th Cir.2000). Thus, to the extent that Petitioner asserts a violation of Michigan Rules of Evidence, that claim is not cognizable on federal habeas review.

The Confrontation Clause of the Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. "The Sixth Amendment's right of an accused to confront the witnesses against him is . . . a fundamental right and is made obligatory on

12

the States by the Fourteenth Amendment." Pointer v. Texas, 380 U.S. 400, 403, 85 S.

Ct. 1065, 1067-68 (1965). The rights of confrontation and cross-examination "have

ancient roots" which the "Court has been zealous to protect . . . from erosion." Id., at

404-05, 85 S. Ct. at 1068 (internal quotation omitted). The right to a trial by jury is

predicated upon the belief "'that the 'evidence developed' against a defendant shall

come from the witness stand in a public courtroom where there is full judicial protection

of the defendant's right of confrontation, of cross examination, and of counsel.'" Id. at

405, 85 S. Ct. at 1069, quoting Turner v. State of Louisiana, 379 U.S. 466, 472-73, 85

S. Ct. 546 (1965).

      The Michigan Court of Appeals found that the testimony was not hearsay

because Officer Shea did not indicate whether his conclusion was based on something

McCauley's stepmother actually said or whether it was an inference he drew because

the phone was registered to McCauley's stepmother. In addition, the Michigan Court of

Appeals held that the testimony was not hearsay under Mich. R. Evid. 801(c) because it

was not offered for the truth of the matter asserted; but, instead, was offered to explain

written notations Officer Shea had made on the phone records. The court of appeals

also held that the Confrontation Clause was not violated because the Officer Shea did

not reveal any testimonial statement from the stepmother. Finally, the court of appeals

found any error not prejudicial, explaining:

> We also note that while defendant complains that the testimony improperly
> allowed the prosecutor to connect him with McCauley, this connection was
> not dependent on any statement by Reed. Officer Shea had already
> testified that he determined that the cell phone number appearing in
> defendant's records was for a cell phone registered to Reed. That was not
> hearsay information obtained from Reed. Evidence that a number on
> defendant's cell phone was linked to a cell phone registered to the

13

step-mother of McCauley, the identified shooter, alone served to connect defendant to McCauley (by showing that the number was registered to a phone to which McCauley would have had access).

Baydoun, 2010 WL 98694 at *5.

"The Clause . . . does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." Crawford, 541 U.S. at 59 n. 9 (2004) citing Tennessee v. Street, 471 U.S. 409, 414 (1985). Thus, "admission of a testimonial statement in and of itself is not enough to trigger a violation of the Confrontation Clause. Instead, the statement must be used as hearsay – in other words, it must be offered for the truth of the matter asserted." United States v. Pugh, 405 F.3d 390, 399 (6th Cir.2005). Accord United States v. Cromer, 389 F.3d 662, 676 (6th Cir. 2004) ("Because the statements were not offered to prove the truth of the matter asserted, the Confrontation Clause does not apply.").

Here, there is no basis for questioning the trial court's decision that the testimony at issue was not offered for a hearsay purpose, as the court of appeals similarly concluded. Petitioner, therefore, has not established a Confrontation Clause violation.

Moreover, even if Officer Shea's testimony violated the Confrontation Clause, the error was harmless. A violation of the Confrontation Clause is subject to harmless error analysis. See Lilly v. Virginia, 527 U.S. 116, 140 (1999); Coy v. Iowa, 487 U.S. 1012, 1021-22 (1988); Delaware v. Van Arsdall, 475 U.S. at 681-84 (1986). On habeas review, to determine whether an error is harmless a court must ask whether the error "'had [a] substantial and injurious effect or influence in determining the jury's verdict.'" Brecht v. Abrahamson, 507 U.S. 619, 623 (1993) quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)). "To determine the effect of the error under Brecht, [the court

14

should] consider both the impact of the improperly admitted evidence and the overall weight of the evidence presented at trial." Peterson v. Warren, 311 F. App'x 798, 805 (6th Cir. 2009), citing Brecht, 507 U.S. at 639. Factors to be considered in determining whether a Confrontation Clause error was harmless under Brecht include: "(1) 'the importance of the witness' testimony in the prosecution's case,' (2) 'whether the testimony was cumulative,' (3) 'the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points,' (4) 'the extent of cross-examination otherwise permitted,' and (5) 'the overall strength of the prosecution's case.'" Vasquez, 496 F.3d at 574 and 574 n. 8 (6th Cir. 2007), quoting Delaware v. Van Arsdall, 475 U.S. at 684.

Here, the Michigan Court of Appeals' conclusion that Officer Shea's testimony, if in error, was harmless is not clearly erroneous, nor is it contrary to, or an unreasonable application of, Supreme Court precedent or federal law. Additionally, given the strength of the evidence against Petitioner, Officer Shea's testimony did not have a substantial or injurious effect on the jury's verdict. Petitioner is not entitled to habeas relief on this ground.

### E. Prosecutorial Misconduct

Petitioner argues that habeas relief should be granted because the prosecutor's improper closing argument and other misconduct denied him his right to due process. Specifically, he argues that the prosecutor: improperly referenced the death penalty, injected race into the proceedings, vouched for the credibility of a prosecution witness, and argued facts not in evidence.

The "clearly established Federal law" relevant to a habeas court's review of a

15

prosecutorial misconduct claim is the Supreme Court's decision in <u>Darden v. Wainwright</u>, 477 U.S. 168, 181 (1986).  <u>Parker v. Matthews</u>, __ U.S.__, 132 S. Ct. 2148, 2153 (June 11, 2012).  In <u>Darden</u>, the Supreme Court held that a "prosecutor's improper comments will be held to violate the Constitution only if they 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" <u>Id.</u> quoting <u>Donnelly v. DeChristoforo</u>, 416 U.S. 637, 643 (1974)).  This Court must ask whether the trial court's (the last state court to address the merits) decision denying Petitioner's prosecutorial misconduct claims "'was so lacking in justification that there was an error well understood an comprehended in existing law beyond any possibility for fairminded disagreement.'" <u>Id.</u> at 2155, quoting <u>Harrington</u>, 562 U.S. at __, 131 S. Ct. at 786-87.

First, Petitioner objects to this portion of the prosecutor's closing argument:

Every single person involved in this case is going to be held accountable for their part.  Everybody did wrong there is no doubt about it.

Mr. Dallal and Rony and Scotty and Peter shouldn't have been involved in a drug deal.  But we don't have the death penalty in Michigan and we certainly don't have it for doing drugs.

Tr., Vol. III, at 131.

The Michigan Court of Appeals held that the prosecutor's argument was not a comment on Petitioner's possible sentence or disposition.  Instead, viewed in context, the comment clearly argued that the victims' illegal conduct did not excuse Petitioner's guilt.  The Court agrees with the court of appeals' characterization of the prosecutor's argument.  It was clearly intended to emphasize for the jury that the victims should not have been shot even if they were engaged in illegal conduct.  There was nothing improper in the prosecutor's argument.

16

Petitioner also claims that the prosecutor improperly injected race and ethnicity into the trial by asking him whether he spoke Arabic.  The Michigan Court of Appeals held that the question was not intended to incite passions or prejudices.  Instead, the prosecutor was attempting to impeach Petitioner's testimony regarding telephone calls he placed from the Wayne County Jail.

 "Appeals to racial prejudice are foul blows and the courts of this country reject them.  Where . . . the facts are such as to indicate that such prejudicial tactics may have had a substantial influence upon the result of a trial, reversal for a new trial is ordered."  U.S. v. Grey, 422 F.2d 1043, 1044 (6th Cir. 1970).  "A racial remark is improper if it is intentionally injected into volatile proceedings where the prosecutor had targeted the defendant's ethnic origin for emphasis in an attempt to appeal to the jury's prejudices."  Aliwoli v. Carter, 225 F.3d 826, 831 (7th Cir. 2000) (internal quotation omitted).

Here, the prosecutor's question regarding Arabic was a reasonable attempt to impeach Petitioner's prior testimony.  The prosecutor did not imply that Petitioner should be convicted based on his ethnicity, nor did she attempt to incite the jury's prejudices.  The prosecutor's questions were not improper.

Next, Petitioner argues that the prosecution improperly vouched for the credibility of prosecution witness Scotty Khemoro, when she stated, in closing argument:

> Absolutely these witnesses were not forthcoming at first.  It's human nature to minimize and try to not . . . be forthcoming and take responsibility for what you've done.

> Some people eventually do, some people don't.  I would suggest to you that the three of the witnesses who . . . were in that car they were different.

> Scotty whose best friend was killed I would suggest to you was probably

17

the most forthcoming and honest and took the most responsibility for what happened.

And I would suggest to you that he's a very credible witness. And I hope that you will think back about what you heard when you listened to these witnesses.

Tr., Vol. III, at 148.

Prosecutors may not vouch for a witness's credibility. Prosecutorial vouching and an expression of personal opinion regarding the accused's guilt "pose two dangers: such comments can convey the impression that evidence not presented to the jury, but known to the prosecutor, supports the charges against the defendant and can thus jeopardize the defendant's right to be tried solely on the basis of the evidence presented to the jury; and the prosecutor's opinion carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own view of the evidence." United States v. Young, 470 U.S. 1, 18-19 (1985). In this case, the Michigan Court of Appeals found no improper vouching, reasoning, in relevant part:

> A prosecutor may not vouch for a witness's credibility or suggest that the government has some special knowledge that a witness's testimony is truthful. People v. Knapp, 244 Mich. App 361, 382; 624 N.W.2d 227 (2001). A prosecutor may, however, argue from the facts that a witness is credible or that the defendant or another witness is not worthy of belief. People v. Howard, 226 Mich. App. 528, 548; 575 N.W.2d 16 (1997). Here, the prosecutor permissibly argued from the evidence that Scotty was the most credible of the witnesses, because he was the most forthcoming about his drug-dealing plans. Contrary to what defendant argues, the prosecutor did not state that all of Scotty's testimony was fully truthful and reliable, nor did she suggest that the jury should accept his testimony because she had some special knowledge that it was truthful. Accordingly, there was no misconduct.

Baydoun, 2010 WL 98694 at *6.

The court of appeals correctly assessed the prosecutor's remarks. The

18

prosecutor's argument simply explored Khemoro's motives for testifying and how forthcoming he was. She did not imply any special knowledge about Khemoro's veracity. Her argument was not improper.

Finally, Petitioner argues that the prosecutor committed misconduct by arguing facts not in evidence when she stated that she assumed Petitioner knew that Khemoro always carried large sums of cash. The Michigan Court of Appeals held that the argument was a reasonable inference form the evidence presented. Moreover, the court of appeals held, to the extent that the prosecutor's argument was not a reasonable inference, the argument had no prejudicial effect. The Court agrees. The prosecutor's comment "was not so pronounced and persistent that it permeate[d] the entire atmosphere of the trial." Pritchett v. Pitcher, 117 F.3d 959, 964 (6th Cir. 1997) (internal quotation omitted). Additionally, the trial court cautioned the jurors that what the lawyers said was not evidence. See United States v. Carter, 236 F.3d 777, 787 (6th Cir. 2001) ("Ordinarily, a court should not overturn a criminal conviction on the basis of a prosecutor's comments alone, especially where the district court has given the jury an instruction that may cure the error."). Petitioner presents no evidence to suggest that the prosecutor intentionally misstated the evidence.

"[T]he Darden standard is a very general one, leaving courts 'more leeway . . . in reaching outcomes in case-by-case determinations.'" Parker, __ U.S. __, 132 S. Ct. at 2155, quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). The Michigan Court of Appeals correctly disposed of Petitioner's prosecutorial misconduct claims. Even if the court of appeals erred, habeas relief would be denied because the court of appeals' decision was not "so lacking in justification that there was an error well understood and

19

comprehended in existing law beyond any possibility for fairminded disagreement."
Harrington, 562 U.S., at ___, 131 S. Ct., at 786–787.

### F.  Newly-Discovered Evidence

Finally, Petitioner argues that the Michigan Court of Appeals' decision that newly-discovered evidence did not warrant a new trial denied him his rights to a jury trial and to due process.

Petitioner's claim that the Michigan state courts deprived him of due process by failing to grant him a new trial is not cognizable on habeas review because the argument that an error was made on post-conviction review does not challenge the constitutionality of Petitioner's custody.  See Kirby v. Dutton, 794 F.2d 245, 246-47 (6th Cir. 1987); see also Roe v Baker, 316 F.3d 557, 571 (6th Cir. 2002).

Also to the extent that Petitioner asserts that McCauley's testimony is evidence that he is actually innocent, an actual innocence claim does not constitute a constitutional claim in itself.  See Herrera v. Collins, 506 U.S. 390, 404-05 (1993), cited in Schlup v. Delo, 513 U.S. 298, 314 (1995).  The Sixth Circuit has interpreted Herrera v. Collins to hold that federal courts must not make independent determinations of guilt or innocence in habeas cases.  See Tyler v. Mitchell, 416 F.3d 500, 505 (6th Cir. 2005). The function of a federal court reviewing a habeas corpus petition is to ensure that the petitioner is not imprisoned in violation of the constitution, not to correct errors of fact. Herrera, 506 U.S. at 400.

Overall, Petitioner habeas relief is not available on this claim.

### VI.  Conclusion

For the reasons stated above, Petitioner's petition for a writ of habeas corpus is

DENIED.  Furthermore, reasonable jurists would not debate the Court's assessment of

Petitioner's claims, nor conclude that the issues deserve encouragement to proceed

further. The Court therefore DECLINES to grant a certificate of appealability under 28

U.S.C. § 2253(c)(2).  See Slack v. McDaniel, 529 U.S. 473, 484 (2000).  However, if

Petitioner chooses to appeal the Court's decision, he may proceed in forma pauperis on

appeal because an appeal could be taken in good faith. 28 U.S.C. § 1915(a)(3).

     SO ORDERED.


       S/Avern Cohn_____
      AVERN COHN
      UNITED STATES DISTRICT JUDGE


Dated:  June 26, 2013


I hereby certify that a copy of the foregoing document was mailed to the attorneys of
record on this date, June 26, 2013, by electronic and/or ordinary mail.


       S/Sakne Chami_____
      Case Manager, (313) 234-5160